The State of California's sentencing policy under the Three Strikes Law is not only inhumane, but misguided. And nowhere is the truth of that observation more evident than in this case. Mr. Tuggle was sentenced to 25 years to life for possession of one dose of methamphetamine. The prior strikes that were used to enhance that sentence are now in question. The gross extent of the underlying crime. After all, how could a crime of possession of one dose of a drug or falsifying a DMV application rise to the level of warranting a sentence like 25 years to life? No court has truly considered the underlying crimes in this case. Here, Mr. Tuggle's innocence has been proven. There is strong evidence that Mr. Tuggle is actually innocent. The Northern California Innocence Project has taken his case. They've submitted a declaration. The lead attorney there, Linda Starr, an exoneration expert, has submitted a declaration stating that there is strong evidence of his innocence, that those claims are being diligently pursued in state court. So we come to you acknowledging that evidence has not yet been developed, and that we're requesting a remand so that someone can give the consideration that is due to the prior convictions. No, the problem with a remand is for how many years would the remand be if you remanded it? I couldn't say for certain at this moment. You couldn't even predict? Based on this record and based on the conviction? I do know. Based on what's there. You'd have no guess. Go ahead. I don't want to stop you arguing. I do know that the Northern California Innocence Project is diligently pursuing the claim. They only take a very small fraction of the claims that come to them, and that they are actively pursuing the claim in state court. I know that Mr. Tuggle has spent quite a number of years in prison, perhaps unlawfully and unconstitutionally, and that he would love the claims to be pursued as quickly as possible. It is not unusual for district courts to stay and obey and let the state courts do what they need to do before claims are amended or The other easy answer for you is it wouldn't make any difference to Mr. Tuggle because he's going to be in jail, and so he'll be serving a sentence, and so the amount of time doesn't matter. I wouldn't ask you to invalidate his sentence. It's cruel and unusual at this time. The record supports his claim of actual innocence, but we have to acknowledge that that evidence just isn't quite there. That's why we're requesting a remand. And as in Reyes, this court has done this before. This wouldn't be an unusual request for this court to remand for the district court or the state courts to develop the record of what actually happened in the prior convictions. Without it, what court can adequately even evaluate whether this sentence is grossly disproportionate to his crime? Well, Andrade, the line of cases poses a problem for you. Well, in those cases, the Supreme Court has stated that we must look at the true factual circumstances of the underlying crime, and that is what we're requesting that this court allow either the district court or the state courts to do. And that line of Supreme Court precedent goes all the way back to Solemn v. Helm. I've heard of that case. Judge Bright coincidentally authored the opinion with great foresight into the upcoming Eighth Amendment jurisprudence, which looked at Helm's sentence and said, wait a minute. The true facts of his underlying crime is what makes this different, is what makes his sentence unconstitutional. And the Supreme Court obviously upheld your decision there, and has since then endorsed the procedure of looking past the definitions of the crime to the true nature of the underlying convictions. Ewing, it didn't quite go Ewing's way. It went the other way. But that's what we ask this court to allow another court to do. And instead of ruling directly on the issue today, concede that we just don't have enough information to make an adequate ruling. And allow the misguided and inhumane law, please don't allow that to trump constitutional rights, to trump justice for Mr. Tuggle. Do you want to save some time for rebuttal? I think we understand your argument. Thank you. I'll hear from the State. Thank you, Your Honors. May it please the Court, Justin Riley on behalf of the Board. Let me start by restating something everybody knows but may have lost sight of. Is that this is an Eighth Amendment claim. We're trying to decide whether or not the sentence is cruel or unusual. I believe Tuggle is arguing that we should take Supreme Court jurisprudence that instructs us to look at prior convictions and the facts of those prior convictions and turn that into an actual innocence claim. He wants to relitigate his old conviction. Now, the Supreme Court jurisprudence that tells us to look at prior convictions only does so and makes clear that they're looking to the facts of those prior convictions to see whether or not the recidivist sentence is reasonable. They want to look to those, the facts of those prior convictions to see whether or not he's committing the same types of crimes, whether he's committing violent crimes and things of that nature. It was never an invitation to relitigate old convictions. Lackawanna instructs us that we presume the prior convictions to be valid. They are presumptively valid, and so when a reviewing court looks at an Eighth Amendment claim, they are not worried about whether or not the prior convictions are valid. Why not? I mean, here you've got three strikes and you're out. And if one of those strikes was not a strike, it was really a ball, then you don't have, then the three strikes law should not apply. Isn't that true? That's absolutely true, Your Honor. And now I realize this is a habeas case, and I realize also that in the state sentencing that might, you know, you might be able to look at the prior conviction and say, well, you could argue that or you could show that the prior conviction was invalid. But very often, there's neither the ability to do that at the time. So I don't know why this is such a horrendous request. The state does not suggest that a recidivist sentence should be enhanced by invalid prior convictions. That's not our argument. That's not our argument at all. What we're saying is by the time we get to the current sentence and we look back to prior convictions, appellants such as here have had the opportunity to invalidate their convictions. Mr. Tuggle, for instance, had his day in court. He had a trial on all of his five convictions. He had an attorney. He had a jury trial. The jury returned a verdict of guilty on those five convictions. He went from there to the California Appellate Court on direct appeal. He had his day in court there, where he had a chance to invalidate his convictions based on a myriad of theories. He went from there on direct appeal to the California Supreme Court petitioning for review. So far, we have the trial court, we have three justices of the appellate court, and we have seven justices of the California Supreme Court validating his conviction. But we don't stop there. Mr. Tuggle went to the State courts on collateral review. He filed State habeas petitions in the Superior Court. In other words, he followed the proper procedure to exhaust is what he meant. This is no different than any other habeas case in all those three. No less than 15 judges passed on the validity of these convictions. Yet, Mr. Tuggle wants us here to go back into the facts of the prior convictions. Well, she's not asking us to do that. She's asking us to rule on whether he's actually a criminal. She's not asking us to rule on whether he's actually innocent. She just wants us to hold this case in abeyance until such a ruling is made. Now, you can make the argument, if you want, against that, but don't you want to focus on what she's really asking us to do? If she's asking for a stay in abeyance procedure, that's not really the issue that was certified to this court, and we didn't have an opportunity to respond to that specific request. I believe what was certified to this court was an Eighth Amendment claim. Right. But here you are, since she's made the argument. So what do you think? Okay. Since we're here, the California's or the — I'm sorry, the United States Supreme Court has never injected any sort of relitigation of prior convictions into an Eighth Amendment analysis. So right off the bat, we have an Edput problem. Secondly, he's arguing, if I understand correctly, if we can delve into actual innocence, and I'm — I've handled this case before. I've handled that issue before, and if you — we'd like to talk about that. Tuggle has to come up with new, reliable evidence, not available at trial, that shows that he is factually innocent of his convictions. He hasn't. This bears a little bit on the evidentiary hearing request this court made to counsel. And so if I could kill two birds with one stone there. Tuggle has not identified any actual evidence that he wishes to elicit. He alleges that there is a missing tape. One has never been found. There's no mention of anything on the record. Despite several discovery requests, despite several discovery orders, no missing tape has ever been found. So he assumes that there is a tape. He assumes the content of the tape. Since we don't know that there even is a tape, we don't know what's on it. It might not even exist. And then he assumes, based on the content of the tape, that the officer was lying. This is not the kind of new and reliable evidence that actual innocence claims are based on. With regard to his prior convictions, Tuggle doesn't point to any new, reliable evidence in that regard either. Still, today, I haven't seen any allegations that there is any new evidence. He wants to retest biological evidence. He wants to relitigate admissibility of evidence. He wants to relitigate to the jury, basically, his theory of the defense. He got to do that at trial. He got to do that on direct appeal. He got to do that on collateral review. There's nothing new here. So an actual innocence claim wouldn't even prevail. What were the prior convictions? The prior convictions were, I believe, sexual assault-related. Rape, I believe, and penetration with a foreign object were, I believe, what the two. I think it was two 16-year-old girls, I think. 16 and 17, as I recall. And there were five counts, five separate counts with two separate victims. And how old is he, do you know? I don't know how old he is, but I believe his convictions are, I want to say they're 25 years old. Twenty-five? 84, 85 was when his conviction was. I think he was 8 years older than the victim. Eight years older than the victim. Yes, that's my recollection. This is more of a functional argument. It's almost impossible for me to relitigate these claims. I've tried to get some of the documents of those cases. They're just they've been purged. They're lost. They're gone. If a tape even did exist, it's gone now, too. This is why Lackawanna held the way it did, that we presume that these prior convictions are valid if the appellant has had the opportunity to challenge them on direct appeal and also collateral review. Unless the Court has any questions on the cruel and unusual sentence, the 25 years to life, I would submit that Taylor v. Lewis controls here, and there's no meaningful basis upon which to distinguish that. I would like to point out, I'll pause just in case, in moving on to the restitution fine, I would like to point out that this was a restitution fine of $10,000, that he is not in custody on a restitution fine, and that even if it is a proper subject of habeas for the same reasons as articulated in Taylor and as argued in Apelli's brief, the $10,000 restitution fine is reasonable. Unless there are any questions, I would submit it on the briefs. Thank you, counsel. Thank you. We're not asking this Court to decide on the claims of actual innocence. Our claim is that the Eighth Amendment claim that we are making cannot be adequately evaluated without a true understanding of the facts and the culpability of Mr. Tuggle. And this hasn't adequately been addressed by the state courts before. And how this case is like Lackawanna County is that, interestingly, in both cases, the state courts lost the habeas petitions. In this case, the state court sat on or lost his habeas petition for over 10 years. And so it never was adequately addressed. And that's about the extent to which Lackawanna County and this case are similar because we are not asking this Court to invalidate the prior convictions. Although, from the record, the claims of actual innocence are substantiated by the record and also by an exoneration. What do you expect to prove in an evidentiary hearing? That the DNA evidence will conclusively prove that he was not the person that committed the crime against the victim Noelle D. She picked someone else out in the lineup, in the photo lineup. They showed another in-person lineup. She again picked someone else. The police went to her, said, are you sure this isn't who it was because we picked him up on another rape? Well, she said, okay, well, maybe. Well, the other rape, according to Mr. Tuggle, was a consensual sexual encounter in which the other female gave him her phone number, said, please call me after the fact, called the police and said, which on the record there is evidence that she perhaps was afraid she was pregnant and reported it to cover up because her current boyfriend was sterile and so she was afraid of what might happen. Those two cases were consolidated at trial. This is just all to say that there is enough actual innocence evidence to at least make this court think, hmm, we don't have enough information. We don't have enough information about the facts and culpability of Mr. Tuggle. That solemn, for example, requires us to consider. You know, the problem, I think, and just a third of the court, we've got convictions. And so we look at the record based on conviction. Now, there are those who would say that 25 years to life is still whatever you want to call it, but when we've got the conviction, that's what we have to rely on until it changes. Now, if this actual innocence business works for you, what's to stop you from coming again with a petition? Well, if the Eighth Amendment claim is denied here, it's forever denied. He will not be able to be able to bring an actual innocence claim, a standalone claim. Yeah, he would be denied that, but on his three strikes, wouldn't he still have, it can't be three strikes because, one, now I'm actually innocent of it. He's not claiming actual innocence of the triggering crime is the problem, and how does he come back to this court saying I'm actually innocent of my prior strikes? I'm not actually innocent of my triggering crime, my exceedingly minor triggering crime. And if this court forecloses the Eighth Amendment claim, it will be forever barred. But basically what you're asking us to do is to order the district court to stay the case while you pursue your state remedies and habeas relief, right? Please. The district court doesn't have the power to set aside those convictions. Those aren't an issue here. So you've got to go through all the state remedies and stay and obey. And so I guess your legal theory is that the district court erred in not staying and obeying, but that's not really in the petition. So procedurally it gets a little bit complicated to achieve what you want to achieve. I agree that it is complicated. I agree that we contend that the district court erred in not on its own requesting discovery, granting an evidentiary hearing. There's enough. The record supports some court giving recognition to these substantiated claims. The district court refused to do so, refused to grant appointment of counsel. The state courts lost the petition, didn't adequately address the claims. So if I get the picture, tell me what, if you were me, your writing opinion, what would I say in the order that is based on what's here before us? The case should be remanded for factual development of the underlying convictions. Well. And either the district. You know, that is not included in the certificate of appeal either. The certificate of appeal is whether the. . . Whether it's true and unusual. And that claim. . . We're saying that that's part of it. If the underlying crimes, if there's actual innocence, or those underlying crimes cannot stand anymore, he's not subject to the 25 years to life. That's right. You can't actually evaluate the Eighth Amendment claim, whether it's grossly disproportionate or not, because you're required to look at the factual circumstances and the culpability of the defendant of the underlying crimes, and that's just not simply before this court to make an adequate Eighth Amendment evaluation. Well, the trouble with that, of course, is that in a broader context the Supreme Court has said we don't really want to look behind convictions. I mean, the Taylor analysis, which usually cuts in favor of the defendant, because it says we have to rely on the judicially noticeable documents to determine, for example, sentencing enhancements in the federal court or immigration consequences under the Immigration and Naturalization Act. And the theory of Taylor is we don't want a lot of collateral litigation about old crimes. We don't want to relitigate them in federal court to prove whether you had them or not. So it seems to me the only way we get to where he'd like us to get is a stay in advance, because he's, in my view, probably has to develop that actual innocence claim in state court to try to get his convictions. We can't order the district court to make a factual determination, at least I don't think we can, on the prior convictions. They have to stand or fall as they are on the record now. I understand that. I'm saying that to you because I just have some other response, but that's my reaction. I understand that the courts are concerned with reviewing claims that have been reviewed and the potential floodgates of litigation. This claim is unique because it is supported by the record. It is an expert in the field has decided that there is a basis there for further factual development. And it just would be simply against Supreme Court precedent to evaluate a sentence as grossly disproportionate understanding the nature of the crimes, which is the sole justification for the exceedingly harsh sentence. Thank you. Mr. Riley, if I was in your position, I would wonder if we didn't go a little beyond normal rebuttal, and if so, do I have an opportunity to respond? If we decide the case on anything that's been discussed, we would certainly, the court would certainly give you an opportunity to do a written response. So I've been in that position, and I know you think, good gracious, when are they going to stop the rebuttal. You were responding to his body language. That's right. As in the prior case. Well, thank you very much. It's an interesting case. Thank you for your arguments. The case will be submitted then. Judge Wright, this is our last day with you. I want to thank you again for coming down, and I want to thank my dear friend, Judge Ferris. It's always such a pleasure to sit with you. I argued my first case in front of Judge Ferris in the Ninth Circuit. This shows how old I am. It's always a wonderful pleasure. It's always a pleasure to come here, particularly when there are 25 inches of snow in Fargo, North Dakota. We'll be in recess for the morning.
judges: Farris, Thomas, Bright